IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HANNAH S.[1]**,

      Plaintiff,

    v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

      Defendant.

Case No. 1:20-cv-1623-SI

**OPINION AND ORDER**

Sara L. Gabin, SARA L. GABIN PC, 14523 Westlake Drive, Lake Oswego, Oregon, 97035. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney; Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Nancy C. Zaragoza, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Hannah S. brings this action under § 205(g) of the Social Security Act, *as amended*, 42 U.S.C. § 405(g) (Act), to obtain judicial review of a final decision of the Commissioner of the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Social Security Administration (Commissioner) denying Plaintiff's application for supplemental security income (SSI) under Title XVI of the Act. For the reasons explained below, the Court REVERSES AND REMANDS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

On July 18, 2017, Plaintiff applied for SSI alleging that her disability began on April 2, 2002. AR 66. Plaintiff's application was denied initially and upon review. She requested a hearing before an administrative law judge (ALJ). Plaintiff, through her representative, amended the alleged onset date to July 18, 2017. Plaintiff was born on June 25, 1992, and she was 25 years old as of the amended alleged disability onset date. *Id.* After a hearing, the ALJ denied Plaintiff's claim on November 27, 2019. AR 15-25. The Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff seeks judicial review of that decision before this Court.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2017, the application date. AR 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity; depression and anxiety disorders; and autism spectrum disorder (previously described in her records as Non-Verbal Learning Disorder). *Id.*

At step three, the ALJ found that Plaintiff had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. AR 18-19. The ALJ then determined that Plaintiff had the RFC to perform no more than medium work as defined in 20 C.F.R. § 416.967(c). AR 19. The ALJ also found that Plaintiff would need to avoid all exposure to workplace hazards such as heights and heavy machinery, could have no more than frequent superficial contact with coworkers and occasional contact with the general public, and could tolerate no more than occasional changes in the workplace setting. *Id.*

At step four, the ALJ concluded that Plaintiff had no past relevant work. AR 23. At step five, the ALJ found that there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform, including laundry worker, industrial cleaner, and kitchen helper. AR 24. The ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 18, 2017, the date the application was filed. AR 25.

## DISCUSSION

Plaintiff raises three claims of error: (1) the ALJ provided insufficient reasons to discount Plaintiff's symptom report; (2) the ALJ gave insufficient reasons to discount treating source evidence; and (3) the ALJ failed to develop an accurate RFC. The Court addresses each alleged error in turn.

### A. Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ is required to specifically identify what evidence contradicts what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Dodrill*, 12 F.3d at 918 (holding that it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Nan B. v. Saul*, 2020 WL 6636221, at *6 (D. Or. Nov. 12, 2020) (finding that the ALJ's summary of the medical record, statement that the

PAGE 7 – OPINION AND ORDER

claimant's testimony "was not entirely consistent with the medical evidence and other evidence 'for the reasons explained in this decision,'" and failure to "discuss which testimony about what limitations he is crediting or discrediting, and why" was legal error). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Here, the ALJ offered several reasons for discounting Plaintiff's testimony. The ALJ found that her claimed limitations were contradicted by her activities, her lack of hospitalizations for her alleged mental health impairments, and her normal mental health examinations. The Court analyzes each reason given by the ALJ in turn.

### 1. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as

to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found Plaintiff's activities contradicted her claimed impairments because Plaintiff lived alone, drove, completed an associate's degree, was pursuing an a theater degree, cleans, does housework, engaged in stage production work at school, played dungeons and dragons, had hobbies and interests, and made plans to travel and visit friends and family. AR 21. The testimony that the ALJ highlighted as contradicted by these activities is that Plaintiff needed accommodations at school and could not work full time.

Although Plaintiff was able to live alone at times and perform the aforementioned daily activities, she was often overwhelmed and could not adequately focus, keep commitments, tolerate change, and sometimes relapsed into a depressive episode lasting several days in a week. AR 263-65, 267-69. Plaintiff argues that although she can do well in school and other daily activities when she is stable, stability is tenuous for her and she has required the assistance of a life coach, an academic advisor, ongoing physical therapy, and other student disability supports. AR 784, 797. In terms of Plaintiff's academic history, she required seven and half years to earn

her associate's degree, and in college, she had five incompletes and a failed class. AR 39, 48-49. She received family help when she relocated from Bend to Ashland.

Plaintiff's activities do not contradict her testimony that she received special accommodations in school. Her activities also do not contradict her testimony that she cannot work full time, because the activities are not transferable to full time work. Thus, the ALJ did not identify any specific testimony that Plaintiff's activities contradicted. The ALJ therefore erred in relying on Plaintiff's daily living activities to discount her subjective symptom testimony.

### 2. Conservative Course of Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). An ALJ is not required to ask the claimant at the hearing about every inconsistency in the record that led the ALJ to find a claimant's testimony not reliable. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The fact that Plaintiff had never been hospitalized for her mental impairments is not a proper basis on which to discount her testimony. "The absence of hospitalizations or other admissions does not mean Plaintiff did not seek appropriate treatment or that the treatment provided was unduly conservative." *Cody T. v. Saul*, 2021 WL 2660088, at *13 (D. Or. June 28,

2021). "This district . . . has repeatedly found that, in the context of mental health, the mere fact that a claimant has not been admitted to a hospital on an inpatient basis does not mean that a claimant received conservative treatment." *Shelly A. O. v. Comm'r, Soc. Sec. Admin.*, 2020 WL 3868504, at *7 (D. Or. July 8, 2020) (quotation marks omitted); *see also Tammy L. O. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 3090196, at *13 (D. Or. June 20, 2018) ("The Court refuses to find that the mere fact that a claimant has not been admitted to a hospital on an inpatient basis means that the claimant has received only 'conservative treatment.'"). Plaintiff takes six psychotropic medications and continues to have mental health symptoms. The ALJ offered no other suggestion of additional treatment, other than hospitalization. Thus, the ALJ erred in discounting Plaintiff's testimony because she had no prior hospitalizations.

### 3. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Because the Court has found the other reasons given by the ALJ were not clear and convincing reasons supported by substantial evidence, the ALJ could not solely rely on the fact that Plaintiff's mental status examinations did not affirmatively support her alleged limitations. *See Robbins*, 466 F.3d at 883 (9th Cir. 2006) (stating that "[w]hile an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not

substantiated affirmatively by objective medical evidence," and finding where the ALJ's first stated reason for his adverse credibility determination was insufficient, his remaining reason premised on lack of medical support was also legally insufficient).

## B. Medical Opinions

Plaintiff alleges that the ALJ erroneously discounted or rejected medical opinions from Melissa Dever-Mount, PMHNP;[2] Karen Knapp, M.A.; Timothy Hofeldt, M.D.; and Trudy Godat, MS LPC. Defendant disagrees

### 1. Standards

Plaintiff filed her application for benefits on July 18, 2017. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors,[3] in determining how persuasive the opinions are. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence, and

---

[2] The ALJ misidentifies Nurse Dever-Mount as Melissa Dave-Mount.

[3] The secondary factors include relationship with claimant, specialization, and "[o]ther factors." 20 C.F.R. § 416.920c(c).

the source's explanation for the opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. 20 C.F.R. § 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. § 416.920c(b)(2)-(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

### 2. Analysis

#### a. Melissa Dever-Mount, PMHNP

Psychiatric-mental health nurse practitioner Melissa Dever-Mount opined that Plaintiff would be seriously limited in her ability to perform unskilled work and would be unable to meet competitive demands in some aspects of unskilled work, as well as unable to perform more skilled work. AR 785-90, 810-29, 990-93. Nurse Dever-Mount's handwritten notes, several parts of which are illegible, explain that Plaintiff has significant difficulty with sustained focus and concentration, organization, and executive functioning, and that episodes of depression and anxiety impair her ability to manage activities of daily living, routine school, and work. AR 787. The ALJ did not find Nurse Dever-Mount's opinion persuasive because her explanations are difficult to read and provide little support. AR 22. Additionally, the ALJ found that Nurse Dever-Mount's findings, especially with regard to Plaintiff's ability to perform unskilled work, are

inconsistent with the record as a whole, including Plaintiff's testimony that she has worked with lighting on theater productions and has lived independently. AR 22.

Plaintiff argues that the ALJ erred in finding Nurse Dever-Mount's opinion unsupported by the record, noting the consistencies between the opinions from Nurse Dever-Mount, Dr. Thomas Brent Shields, Ms. Knapp, and Ms. Godat. Plaintiff also asserts that Nurse Dever-Mount's opinion tracks Dr. Hofeldt's observations of several years about Plaintiff's difficulty in maintaining sleep habits. The Court agrees with the ALJ that Nurse Dever-Mount's handwriting is often illegible and generally difficult to decipher. The legible portions do not offer adequate support for the opined limitations. Additionally, as the Court discusses below, the ALJ did not err in discounting or rejecting Ms. Knapp and Ms. Godat's opinions. Therefore, the apparent consistencies among the opinions of Ms. Knapp, Ms. Godat, and Nurse Dever-Mount are unpersuasive. Although there is consistency between Nurse Dever-Mount's opinion and Dr. Shield's opinion that Plaintiff has difficulty sustaining concentration over extended periods and would periodically withdraw and isolate, there are other, contradicting medical opinions. It is the ALJ, and not the Court, who evaluates the various medical opinions. The fact that there may be a medical opinion consistent with some of Nurse Dever-Mount's opinion does not alone meet the revised guidelines' supportability and consistency requirements. To the extent Plaintiff cites additional pages of Nurse Dever-Mount's charts, those pages generally describe ongoing diagnoses and plans and do not add further support. *See, e.g.*, AR 817, 825, 991. Thus, the ALJ did not err in discounting Nurse Dever-Mount's medical opinion.

### b. Karen Knapp, M.A.

Occupational therapist Ms. Karen Knapp opined that Plaintiff requires a life coach for grocery shopping, apartment cleaning, and registering for classes and that Plaintiff cannot practice regular bathing and grooming independently. AR 618. Plaintiff argues that although the

ALJ summarized Ms. Knapp's findings, the ALJ erred in failing to assign the opinion any weight. AR 22. The ALJ found Ms. Knapp's opinion as inconsistent with the record as a whole showing Plaintiff's ability to live independently, attend college, and do technical stage productions, among other things.

Although Plaintiff's interpretation of the record may be a reasonable one, the ALJ's interpretation also is reasonable. When there is more than one reasonable interpretation, the Court upholds the ALJ's interpretation. *See Burch*, 400 F.3d at 679. The Court agrees with the ALJ that Ms. Knapp's opinion is inconsistent with other evidence on the record, particularly that Plaintiff lives alone and generally can proceed with her daily life, attend college, and work on technical theater productions. Therefore, the Court finds that the ALJ did not err in discounting Ms. Knapp's medical opinion.

        c. **Timothy Hofeldt, M.D.**

Dr. Timothy Hofeldt opined that Plaintiff "has been recognized as having impairment in functioning in independent living; interpersonal, academic, and occupational performance and relationships rising to the level of disability." AR 784. He described that Plaintiff was recognized as a person with a disability beginning in early elementary school and was placed on an individual academic plan pursuant to Section 504 of the Americans with Disabilities Act (ADA) from elementary school through high school. He noted that with the assistance of an individual therapist, individual independent living coach, and individual academic advisor, Plaintiff "has been taking courses and living as independently as possible." *Id.* Dr. Hofeldt then stated that "[a]ppropriately, [Plaintiff] has submitted paperwork for [SSI] disability through the Social Security Administration given her past and continued inability to work or live independently." *Id.*

The ALJ found Dr. Hofeldt's opinion unpersuasive. The ALJ concluded that Dr. Hofeldt made a determination of disability that is reserved for the Commissioner, that Dr. Hofeldt erroneously stated that Plaintiff was in special education classes during high school, and that Dr. Hofeldt's opinion was inconsistent with the record. AR 22-23.

For the first reason, Dr. Hofeldt did not conclude that Plaintiff was disabled as that term is used under the Social Security Act. Dr. Hofeldt described that Plaintiff was determined to be disabled under the ADA. Then Dr. Hofeldt's opinion simply recites the fact that Plaintiff has applied for SSI, albeit with the editorialized comment of "appropriately." The ALJ erred by discounting Dr. Hofeldt's opinion for making the ultimate decision on disability.

For the second reason, Dr. Hofeldt did not state that Plaintiff was in special education classes during high school. Dr. Hofeldt stated that Plaintiff had an individualized education plan from elementary school through high school, but an individualized education plan does not necessarily require placement in special education classes.

For the third reason, the ALJ emphasized that Dr. Hofeldt's opinion was inconsistent with the record evidence that that Plaintiff drives, moved from one city to another, attends college, does laundry and housework, and does technical stage production work. AR 23. Dr. Hofeldt, however, merely states that Plaintiff has attended a transitional program since matriculating and is attending college courses and living as independently as possible. That statement is not contradicted by the fact that Plaintiff attends college courses, does stage production work, and lives with some independence.

As the Commissioner points out, Dr. Hofeldt does not opine as to any specific limitations or provide any functional limitations based on Plaintiff's impairments. The ALJ, however, did not discuss this problem with Dr. Hofeldt's opinion. The Court cannot rely on the *post hoc*

reasoning of the Commissioner. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). The ALJ therefore erred in evaluating Dr. Hofeldt's opinion.

The Court, however, considers whether the error is harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115; *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). Because Dr. Hofeldt did not opine as to any functional limitations, the ALJ's error is harmless.

### d. Trudy Godat, MS LPC

Plaintiff's counselor Ms. Trudy Godat submitted a letter on September 13, 2017. AR 562-63. This letter describes Plaintiff's history of depression, primarily by repeating Plaintiff's self-reports. It then contains a section labelled "Treatment and Therapeutic Recommendations," which describes Plaintiff's treatment strategies. Ms. Godat notes here that Plaintiff "appears to have increasingly improved on regulating emotions and seems to have increased self-esteem and confidence" and that she "appears to absorb more each session and is increasingly able to remember, use and create change with managing anxiety and depressive symptoms and moods." AR 63. Ms. Godat also notes that Plaintiff will need continued support as she continues with her education, including "therapy, medication management, as well as social and academic supports." *Id.*

Plaintiff argues that the ALJ erred by ignoring this letter. The Commissioner responds that because this letter did not contain any discussion about Plaintiff's functional limitations or

restrictions, it was not a medical opinion under 20 C.F.R. § 416.913 and the ALJ did not need to consider the letter. The Court agrees.

Under 20 C.F.R. § 416.913, a medical opinion must opine about "what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). This includes limitations and restrictions in the physical or mental demands or work, other demands of work such as seeing and hearing, or the ability to adapt to environmental conditions such as temperatures or fumes. *Id.* § 416.913(a)(2)(i). Ms. Godat's letter does not include any such assessment.

Further, an ALJ may discount an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" and does not include "any named limitations such as the inability to lift, stoop, walk, stand or sit"); *Gerde v. Berryhill*, 2018 WL 2193194, at *3 (W.D. Wash. May 14, 2018) ("The lack of specificity as to functional limitations is a legitimate reason to discount a medical opinion."). Additionally, an ALJ need not consider or act upon comments that amount to mere suggestions, as opposed to functional assessments. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (noting that when a doctor's observation is a recommendation, it is "neither a diagnosis nor statement of [the claimant's] functional capacity" and an ALJ "[does] not err by excluding it from the RFC"); *Espenas v. Colvin*, 2014 WL 7405655, at *8 (D. Or. Dec. 30, 2014) (noting that comments such as that the claimant "would benefit from additional instruction and time when adapting to more complex changes and would benefit from assistance in setting work goals"

PAGE 18 – OPINION AND ORDER

were "occupational suggestions, not limitations per se"); *Villalobos v. Colvin*, 2014 WL 127084, at *8 (D. Or. Jan. 9, 2014) (noting that where the doctor's verbiage suggests "recommendations, as opposed to imperatives," they "are neither diagnoses nor statements of plaintiff's RFC"). Thus, the ALJ did not err in discounting Ms. Godat's September 2017 letter.

## C. RFC

Plaintiff asserts that the ALJ failed to develop an accurate RFC. Because the Court finds that the ALJ erred in assessing Plaintiff's subjective symptom testimony, the RFC may not include all of Plaintiff's limitations and restrictions.

## D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ erred in considering Plaintiff's subjective testimony. Ambiguities and conflicts remain in the record, however, including with medical testimony that supports and contradicts Plaintiff's testimony. The ALJ will need to resolve these ambiguities and conflicts and remand. The ALJ may also reconsider Dr. Hofeldt's opinion, for which the Court determined the ALJ engaged in harmless error.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled between the alleged onset date and July 18, 2017 and REMANDS the decision for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 24th day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge